{¶ 1} Kareema Watkins[1] appeals from two separate entries of the Hamilton County Juvenile Court. In an entry dated October 8, 2001, the juvenile court denied Watkins's petition for custody of her minor son, Delrico Brazile, because it found that Watkins had entered into a shared-parenting plan with the child's biological father, Leroy Brazile, in June 1997 and that the best interests of Delrico would be served by keeping the shared-parenting plan in effect with some modifications. In an entry dated October 15, 2001, the juvenile court modified the shared-parenting plan to give Watkins more visitation during the school year and to give Brazile more visitation during the summer months. Watkins raises seven assignments of error for our review.
I. FACTS
{¶ 2} On October 12, 2000, Watkins filed a petition for custody of her minor son, Delrico Brazile, pursuant to R.C. 2151.23(A)(2). Shortly thereafter, Watkins filed a motion to vacate the juvenile court's October 1997 order in case number P-97-2620. In that order, the juvenile court had dismissed Watkins's complaint for child support because Delrico's biological father, Leroy Brazile, was listed as the residential parent under a shared-parenting agreement.
{¶ 3} In her motion to vacate, Watkins alleged that she had been the residential parent for Delrico since his birth; that she had not been present when the juvenile court had dismissed her complaint for child support; and that she had never entered into or signed a shared-parenting plan with Brazile. She also alleged that the shared-parenting plan had never been filed with the juvenile court. Watkins claimed that she had been voluntarily permitting Delrico to visit Brazile, and that, after one of those visits, Brazile refused to return Delrico. When Watkins attempted to pick up Delrico from school on October 7, 2000, she was told by school officials that because she was not listed as his residential parent, they could not release him to her. It was only then that she became aware of the October 1997 order and filed the petition for custody of Delrico.
{¶ 4} On December 15, 2000, a magistrate issued an interim order of visitation, appointed a guardian ad litem to represent Delrico, and set Watkins's motion to vacate for a hearing before the juvenile court. Shortly thereafter, both judges of the juvenile court recused themselves. Watkins's motion to vacate the juvenile court's order in case number P97-2620, as well as her petition for custody in case number F00-2083Z, was then assigned to a visiting judge.
{¶ 5} On July 18, 2001, a hearing was held before the visiting judge on both matters. During the hearing, Watkins testified that Delrico had resided with her since June 5, 1995, the date of his birth. She further testified that in May 1997 genetic testing had concluded that Brazile was Delrico's biological father. Although Watkins denied signing a shared-parenting plan with Brazile, she did admit that she had permitted Delrico to visit Brazile from 1997 to the present. Watkins testified that she was currently married and lived in a three-bedroom apartment with her husband and six children, including Delrico. Watkins stated that she was currently disabled and stayed at home to care for the children.
{¶ 6} Watkins then presented testimony from her probation officer. He testified that Watkins had brought Delrico to her monthly probation appointments from June 1997 to December 2000. He further testified that he had no problem with Watkins during her probation. Watkins also presented testimony from her mother, her sister-in-law, and the grandmother of one of her other children. The substance of each woman's testimony was that they had seen Delcrio with Watkins from roughly 1996 until October 2000. Watkins's mother testified that Watkins and Delrico had lived with her from 1996 to 1999. Watkins's current husband also testified that Delrico had been living with him and Watkins since 1999, that he loved Delrico, and that he wanted to integrate him within their family.
{¶ 7} Brazile testified that he had written the shared-parenting plan, which Watkins had signed in July 1997. He was listed as the residential parent under the plan during the school year, with Watkins then having custody of Delrico during the summer months. Brazile testified that he had been following the shared-parenting plan since 1997 and that he wanted to maintain it. Brazile also testified that he was a police officer with the Cincinnati Police Department and that he owned his own home. He stated that three of his children, including Delrico, lived with him. He testified that he generally worked the day shift, but sometimes worked overtime. He further testified that he wanted to enroll Delrico in a private school.
{¶ 8} Brazile presented testimony from a witness to the shared-parenting plan. That witness testified that she saw Watkins sign the shared-parenting plan. The witness also testified that she had babysat Delrico from shortly after he was born until the summer of 1997.
{¶ 9} Brazile also presented testimony from a former girlfriend and his ex-wife. The former girlfriend testified that she had lived with Brazile from 1997 until October 2000 and that Delrico had been living with her and Brazile during that time. Brazile's ex-wife, who was a magistrate in the Hamilton County Juvenile Court, testified that she had seen Delrico so often when dropping off and picking up her daughter at Brazile's home that she had become emotionally attached to Delrico.
{¶ 10} Brazile presented further testimony from the director of a daycare center. The director testified that Delrico had attended the daycare center from September 1999 through October 1999 and again from April 2000 through June 4, 2000. She acknowledged that Brazile paid Delrico's tuition for the school and that she was never made aware of Watkins's relationship with Delrico.
{¶ 11} The guardian ad litem also filed a report with the juvenile court detailing Watkins's and Brazile's working and living arrangements. The report also noted a domestic-violence incident between Delrico and one of Brazile's other children. The guardian ad litem recommended that the parties continue the shared-parenting plan, but suggested that the plan be modified to allow Watkins to provide after-school care for Delrico.
{¶ 12} On October 8, 2000, the juvenile court denied Watkins's petition for custody of Delrico. The court found that Watkins had not offered any evidence to show that she had not entered into or signed the shared-parenting plan with Brazile, in June 1997, while Brazile had presented testimony from a witness to the shared-parenting plan. The court further found that the evidence showed that Delrico had been living at both residences from 1997 to the present and that the best interests of Delrico would be served by keeping the shared-parenting plan in effect with some modifications. The juvenile court further stated that Delrico would be best served by being afforded the education that Brazile would be able to provide him, with additional visitation by Watkins during the week. In an entry dated October 15, 2001, the juvenile court modified the shared-parenting plan to give Watkins more visitation during the school year and to give Brazile more visitation during the summer months.
II. ANALYSIS
{¶ 13} We begin our analysis by noting that we are unable to address Watkins's first and sixth assignments of error. In her first assignment of error, Watkins argues that the juvenile court erred in accepting the 1997 shared- parenting plan as valid when her signature had been forged on the document. In her sixth assignment of error, Watkins argues her trial counsel was ineffective because counsel did not present any expert testimony to demonstrate that her signature had been forged on the shared-parenting plan.
{¶ 14} "Every litigant in Ohio is entitled to `[a]n appeal as of right by filing a notice of appeal * * * within the time allowed * * *.'"[2] The filing of a notice of appeal is a necessary prerequisite to invoking the jurisdiction of this court.[3]
Thus, when a party fails to file a notice of appeal from a particular decision, we cannot review that decision.[4]
{¶ 15} The record reveals that the juvenile court never consolidated Watkins's petition for custody under case number F00-2083Z with her motion to vacate the judgment in the case numbered P-97-2620. Although the juvenile court clearly entered judgment upon both matters, Watkins has only filed a notice of appeal from the F00-2083Z case. Because Watkins has not appealed the P97-2620 case, she has not invoked the jurisdiction of this court to review the underlying shared-parenting decision, and we cannot therefore consider the subject matter of Watkins's first and sixth assignments of error.[5]
{¶ 16} In her second assignment of error, Watkins argues that the juvenile court erred in modifying the parties' shared-parenting plan, because Brazile did not prove a change in circumstances as required by R.C. 3109.04. We disagree.
{¶ 17} We begin our analysis by noting that Watkins moved for custody of Delrico under R.C. 2151.23(A)(2). R.C. 2151.23(A)(2) states that "[t]he juvenile court has exclusive original jurisdiction under the Revised Code * * * to determine the custody of any child not a ward of another court of this state." R.C. 2151.23(F) then provides that "[t]he juvenile court shall exercise its jurisdiction in accordance with section[s] R.C. 3109.04 * * *."
{¶ 18} Watkins subsequently moved to set aside the juvenile court's 1997 order holding that a valid shared- parenting plan was entered into by the parties. Taken together, these two motions indicated that Watkins wanted the shared-parenting plan either set aside as invalid or terminated if the juvenile court deemed the plan to be valid. Because Watkins moved to set aside the shared-parenting plan, the burden of proof was upon her, not Brazile, to show why the shared-parenting plan should have been terminated.
{¶ 19} Watkins's argument additionally confuses the statutes for modifying and terminating a shared- parenting decree. R.C. 3109.04(E)(2)(c) states that a juvenile court may terminate a shared-parenting decree upon the request of one or both parents if it determines that shared parenting is not in the best interests of the children. R.C. 3109.04(E)(1)(a) provides, however, that a juvenile court can only modify a shared-parenting plan when there has been a change of circumstances and the modification is necessary to serve the best interests of the child.[6] When a parent seeks to modify a decree of custody, the burden of proof is upon that parent to demonstrate that a change in circumstances has occurred and that the modification would be in the best interests of the child.[7]
{¶ 20} Even though the juvenile court ultimately held that Delrico's best interests would be served by modifying the shared-parenting plan rather than by terminating it, the juvenile court's decision did not shift the burden of proof to Brazile to show a change of circumstances. Consequently, we find Watkins's second assignment of error to be without merit.
{¶ 21} We next address Watkins third assignment of error, in which she argues that the juvenile court abused its discretion in failing to conduct an interview of Delrico.
{¶ 22} R.C. 3109.04(B)(1) provides in pertinent part, "When making the allocation of the parental rights and responsibilities * * *, the court shall take into account that which would be in the best interests of the children. In determining the child's best interest * * *, the court * * * upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." R.C. 3109.04(B)(2) further provides that "if the trial court then determines the child does not have sufficient reasoning ability to express his wishes and concerns, * * * the court shall not determine the child's wishes and concerns with respect to the allocation."[8]
{¶ 23} In this case, Watkins's counsel orally requested that the juvenile court interview Delrico during the hearing. Although Delrico was present and available for an interview at the time of the request, the juvenile court decided not to interview him because the guardian ad litem had stated that Delrico had continually expressed differing opinions to her about which parent he wished to reside with, and because the guardian ad litem's report adequately reflected Delrico's wishes.
{¶ 24} Because Watkins's counsel had moved the court to interview the child, the juvenile court was statutorily required to conduct an in-chambers interview of Delrico. Even though the juvenile court stated that it had considered Delrico's wishes by way of his guardian ad litem, the state legislature has made it abundantly clear that once a party requests that the juvenile court interview a child, the juvenile court must attempt to listen to the child's input. If the juvenile court interviews the child and then determines that special circumstances exist under R.C. 3109.04(B)(2), such that it would not be in the child's best interest to consider his wishes and concerns, then the juvenile court must journalize those findings. So even though the possibility existed that an interview of Delrico would not have altered the ultimate decision on custody in this case, we must sustain the third assignment of error and remand the case to the juvenile court so that it can interview Delrico.[9]
{¶ 25} In her fourth assignment of error, Watkins argues that the juvenile court ignored her request for full custody. In her fifth assignment of error, Watkins argues that the juvenile court ignored evidence that Delrico had spent considerable time with her. In her seventh assignment of error, Watkins argues the juvenile court's decision was against the manifest weight of the evidence. Because these assignments are interrelated, we address them together.
{¶ 26} We review a juvenile court's decision in custody proceedings under an abuse-of-discretion standard.[10] "According to the Ohio Supreme Court, a trial court abuses its discretion in a custody case when its decision is not supported by a substantial amount of competent credible evidence."[11]
{¶ 27} Pursuant to R.C. 3109.04(E)(1), a trial court may modify a decree allocating parental rights and responsibilities when it finds that a change of circumstances has occurred and that the modification is in the child's best interest.[12] When determining the child's best interest, the juvenile court must consider all relevant factors, including those set forth in R.C. 3109.04(F).[13]
{¶ 28} After reviewing the record, we cannot say that the juvenile court ignored Watkins's motion for custody, nor can we say that it ignored evidence that Delrico had spent substantial time with Watkins. In its decision, the juvenile court explicitly stated that Watkins wanted to set aside the shared-parenting plan. The court found, however, that it would not be in Delrico's best interest to do so. Rather the juvenile court found that Delrico's best interest would be served by maintaining the shared-parenting plan with some modifications. In doing so, the juvenile court recognized that both parties had presented conflicting testimony as to whom Delrico lived with from June 1997 to October 2000, and that one of the parties was "either lying or mistaken as to the events that transpired" during that time. The court further stated that, after reviewing the testimony, the parties and the witnesses, the demeanor of the witnesses, and the exhibits, as well as the guardian ad litem's report, it was "sure that Delrico had lived at both parties' residences at various times." Thus, we overrule Watkins fourth and fifth assignments of error.
{¶ 29} Even though we find the juvenile court's decision to be well reasoned, we must sustain the seventh assignment of error because the juvenile court did not personally interview Delrico and did not ascertain his wishes and concerns in determining his best interest, which was one of the factors it had to consider under R.C. 3109.04(F).
{¶ 30} As a result, the judgment of the juvenile court is reversed and this cause is remanded so that the juvenile court can interview Delrico and, if appropriate, weigh Delrico's wishes and concerns as a factor in making a new custody determination.
Judgment reversed and cause remanded.
Hildebrandt, P.J., Sundermann and Winkler, JJ.
[1] Her name also appears as Kareema Hinkston in some of the court documents.
[2] See Moldovan v. Cuyahoga Cty. Welfare Dept. (1986),25 Ohio St.3d 293, 294, 496 N.E.2d 466.
[3] See Wigton v. Lavender (1984), 9 Ohio St.3d 40, 43,457 N.E.2d 1172.
[4] See App.R. 1, 3, and 4.
[5] See App.R. 3(C).
[6] R.C. 3109.94(E)(1)(a).
[7] See Corbett v. Corbett (1930), 123 Ohio St. 76, 174 N.E. 10;Schwalenberg v. Schwalenberg (1940), 65 Ohio App. 217, 29 N.E.2d 617;Beamer v. Beamer (1969), 17 Ohio App.2d 89, 244 N.E.2d 775.
[8] Badgett v. Badgett (1997), 120 Ohio App.3d 448, 698 N.E.2d 84.
[9] See Badgett, supra, 120 Ohio App.3d at 452.
[10] See Miller v. Miller (1988), 37 Ohio St.3d 71, 523 N.E.2d 846.
[11] See Davis v. Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260,674 N.E.2d 1159.
[12] See Zinnecker v. Zinnecker (1999), 133 Ohio App.3d 378, 383,728 N.E.2d 38.
[13] See In re Hughes (June 23, 2000), 1st Dist. No. C-990346.